IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARIO L. BOWLING, | ) | |
|     Plaintiff, | ) | CASE NO. 7:19CV00453 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, ET AL., | ) | By: Hon. Glen E. Conrad |
|     Defendants. | ) | Senior United States District Judge |

The plaintiff, Mario L. Bowling, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging that the defendants used excessive force against him and denied him due process related to a disciplinary hearing. After review of the record, the court concludes that the defendants' motion for summary judgment must denied in part and dismissed in part. Further, the court will summarily dismiss Bowling's due process claims and will refer the remaining claims to the magistrate judge for further fact finding on the issue of exhaustion of administrative remedies.

I.  BACKGROUND.

Bowling alleges the following sequence of events on which he bases his § 1983 claims. In the summer of 2017, Bowling was confined at Red Onion State Prison ("Red Onion"). On June 24, 2017, as Bowling left the housing unit for the recreation yard, another inmate attacked him, and Bowling "defended himself." Compl. 4, ECF No. 1. Officers reported the incident. When K9 Officer T.S. Bray responded with his canine, Bowling saw him enter the housing area, turned to face away from Bray, and began to place himself face down on the ground. With no verbal warning and before Bowling could reach the ground, Bray engaged his canine on Bowling's right tricep muscle. Bowling turned toward Bray. "The canine then released [Bowling's] shoulder but, almost immediately[,] bit into [his] left hamstring." Id. Bray "held [Bowling's] leg in the air

allowing his canine to sink his teeth into it, all while both of [the inmate's] hands were on the ground in a non-aggressive prone position." Id. at 5. Other officers arrived, assisted in restraining Bowling, and escorted him to the medical unit. J. Stanley, another K9 officer, took photographs of Bowling's injuries, while a sergeant videotaped the medical procedure. Bowling suffered a "bite wound to his left hamstring that required daily dressing change and two months to fully heal." Id.

Based on this dog bite incident, on June 26, 2017, an officer served Bowling with a disciplinary charge for gathering around or approaching any person in a threatening or intimidating manner. Bowling signed the form indicating that he had been informed of the charge and advised of his rights for the hearing. He declined the penalty offer, thus signaling his understanding that a disciplinary hearing would be scheduled. Bowling asked for production of the surveillance camera videotape of the incident and the photographs of his injuries for use at the disciplinary hearing. M.L. Counts conducted the hearing on July 13, 2017. He refused Bowling's requests for the video footage because it was restricted for security reasons. He refused the request for photographs as untimely submitted. Counts also refused to allow Bowling to complete his questioning of Bray and ruled that Bowling was "being disruptive and dismissed the hearing," which was deemed a finding of guilt. Id. at 6. The imposed penalty was a $15 fine. On appeal, Warden Kiser refused to overturn Counts' rulings and upheld the guilty finding. Bowling asserts that because he is an Interstate Corrections Compact ("ICC") inmate, who was convicted in Maryland, the guilty finding "resulted in a loss of several months of Good Conduct Credits" through the Maryland Division of Corrections ("MDOC"). Id. at 7.

Bowling filed his § 1983 complaint in June 2019, alleging the following claims: (1) Bray used excessive force against him; (2) Bray committed state law torts of assault and battery against

him; (3) K9 Officer Stanley, Warden Kiser, and VDOC Director Clarke failed to act on knowledge of a widespread pattern of excessive force by K9 officers against inmates; (4) at the disciplinary hearing, Counts failed to allow requested evidence, denied a meaningful opportunity to question the reporting officer, and found Bowling guilty of gathering around another person in a threatening manner based on insufficient evidence, all in violation of due process; and (5) Warden Kiser failed to correct these due process violations on appeal.

The defendants have moved for summary judgment. They argue that Bowling's claims (1), (2), and (3) must be dismissed because he failed to properly exhaust available administrative remedies. The magistrate judge granted the defendants' motion to stay all discovery except as to the issue of exhaustion. Bowling has responded to the defendants' exhaustion defense, making their motion ripe for disposition on that issue.

## II. DISCUSSION.

### A. The Summary Judgment Standard.

The standard of review for a motion for summary judgment is well-settled. The court shall grant summary judgment when the pleadings, discovery responses, and record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuinely disputed material fact exists if the evidence shows "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A court shall view the facts and reasonable inferences from the facts in the light most favorable to the nonmovant when ruling on a motion for summary judgment.[1] Id. at 255.

---

[1] The court has omitted internal quotation marks, alterations, or citations here and elsewhere throughout this memorandum opinion, unless otherwise noted.

To be successful, a summary judgment movant must demonstrate that "there is an absence of evidence to support the non-moving party's case and . . . that the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits . . . , the nonmovant may not rest on the mere allegations or denials of the pleadings. See Oliver v. Va. Dep't of Corrs., No. 3:09CV00056, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing Fed. R. Civ. P. 56(e)). Instead, the nonmovant must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. See Anderson, 477 U.S. at 256–57. Verified complaints and pleadings by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

### B.  Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. See 42 U.S.C. § 1997e(a). Exhaustion is mandatory under § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. Jones v. Bock, 549 U.S. 199, 216 (2007).

The Supreme Court has also instructed that the PLRA "requires proper exhaustion." Woodford, 548 U.S. at 93. Proper exhaustion means using all steps of the available administrative remedy procedure and doing so properly, so that the agency addresses the inmate's issue on the merits. See id. at 90. Thus, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy § 1997e(a). Id. at 83-84.

An inmate may escape summary judgment under § 1997e(a), if he states facts showing that the remedies under the established grievance procedure were not "available" to him. Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

In support of their motion, the defendants have filed an affidavit from J. Messer, the Human Rights Advocate at Red Onion. See gen. Mem. Supp. Mot. Summ. Messer Aff. and Enclosure A, ECF No. 27-2. Messer states that she is responsible for maintaining inmate grievance files at Red Onion. Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a).

Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, verbally and then in writing on an Informal Complaint form. Once an inmate's Informal Complaint is properly filed, he should receive a receipt and within fifteen calendar days, he should also receive a written response to the issue he raised. If dissatisfied with the response, he may file a Regular Grievance on the issue and attach the Informal Complaint as documentation of his attempt to resolve the issue informally.

The inmate must file a Regular Grievance within thirty days of the occurrence about which it complains. A properly filed Regular Grievance will trigger an investigation, on which the warden or his designee will send the inmate a Level I response. The inmate should receive a Level I response within thirty days from the date of receipt, unless a continuance of up to thirty days is granted. OP 866.1(VI)(D). If the responding official determines the grievance to be "unfounded," the inmate will have five days to appeal that holding to Level II, and in some cases, to Level III of

the grievance procedure. OP 866.1(VI)(D)(6). The procedure provides that even if an inmate does not receive a response to his Regular Grievance, he may appeal: "Expiration of a time limit (to include any authorized continuance) at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review." OP 866.1(VI)(D)(5).

### C. Bowling's Exhaustion Efforts.

The defendants assert that based on Messer's records, Bowling filed a Regular Grievance on July 17, 2017, complaining that on June 24, 2017, Bray allowed his dog to bite Bowling's arm and hamstring. According to Messer, the warden issued a Level I response on August 1, 2017, finding the grievance to be unfounded, and Bowling did not appeal this response. On this evidence, the defendants contend that Bowling failed to properly exhaust administrative remedies as required under § 1997e(a). See gen. Messer Aff. ¶ 11-14 and Encl. A and B.

Bowling responds to the defendants' motion by presenting additional documentation of his exhaustion efforts. On June 28, 2017, Bowling filed an Informal Complaint about Bray's use of his dog against Bowling. Resp. Opp'n Ex., at 1, ECF No. 43-3. A staff member wrote a response at the bottom of the form, dated July 12, 2019, stating that Bray had engaged his canine after Bowling defied orders and continued to move while on the ground. Bowling filed a Regular Grievance dated July 17, 2017, providing his version of the events of the dog bite incident. The Grievance Department stamped this document as received on July 18, 2017. Id. at 2.

On August 23, 2017, Bowling submitted a Level II appeal to the regional ombudsman, stating that he had not yet received a Level I response to his Regular Grievance. Because the thirty-day response time had elapsed, Bowling asserted that he was exercising his right under OP 866.1(VI)(D)(5) to advance to the next level of review. Id. at 3-5. On September 12, 2017,


Bowling wrote a Level III appeal, describing his attempt to appeal to Level II when he did not receive a timely copy of the Level I response. Id. at 9-10.

The court concludes that Bowling's verified declaration and supporting documentation, offered in response to the defendants' motion and Messer's affidavit, create a genuine issue of material fact as to whether or not he received a copy of the Level I response to his Regular Grievance within the required time limit.[2] The court also finds a genuine factual dispute as to whether without that Level I response, Bowling properly attempted to follow OP 866.1 procedures by subsequently pursuing an appeal to the next two levels of review, as his documentation appears to indicate. Accordingly, the court will deny the defendants' motion for summary judgment on the ground of exhaustion, regarding Bowling's claims (1), (2), and (3), and refer the exhaustion issue to the magistrate judge for further proceedings and resolution of this issue before addressing the possible merits of these claims concerning the dog bite incident.[3]

---

[2] It is also unclear whether once Bowling later obtained a copy of the Level I response, he would have been allowed to complete the normal exhaustion process without being ruled out of time.

[3] As stated, the defendants bear the burden of proving the affirmative defense that the plaintiff inmate failed to exhaust available administrative remedies regarding his claims. Jones, 549 U.S. at 212. Once they have done so, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that the administrative remedies were unavailable to him through no fault of his own. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing Moore, 517 F.3d at 725). Circuit courts of appeals to address the question have found that a judge can resolve factual disputes concerning exhaustion of administrative remedies as required under § 1997e(a). See, e.g., Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (explaining judges should decide factual disputes concerning exhaustion); Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011) (finding no right to a jury trial concerning PLRA exhaustion; after evidentiary hearing, court dismissed claims as unexhausted); Drippe v. Tobelinski, 604 F.3d 778, 785 (3d Cir. 2010) (stating that resolving whether a prisoner administratively exhausted his claims required judgment of the court; Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010) (holding "judges may resolve factual disputes concerning exhaustion" through an evidentiary hearing on material factual disputes if necessary); Bryant v. Rich, 530 F.3d 1368, 1375–77 & n. 15 (11th Cir. 2008) (holding court may decide factual disputes concerning PLRA exhaustion and finding no right to a jury trial on the issue); Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008) (setting forth a framework for cases where parties contest PLRA exhaustion that requires the court to hold a hearing and decide the issue). Such disputes arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the exhaustion issue. See 28 U.S.C. § 636(b)(1)(B) & (C).

D. The Due Process Claims.

The court also cannot grant summary judgment as to Bowling's due process claims for failure to exhaust administrative remedies. OP 866.1(IV)(M)(2)(a) states that "[d]isciplinary hearing decisions, penalties and/or procedural errors" are not grievable and may be challenged under a separate procedure set forth in OP 861.1. Moreover, the court cannot yet address the defendants' summary judgment motion on this issue, because discovery was stayed as to every issue except exhaustion. Nevertheless, the court concludes that Bowling's due process claims must be summarily dismissed for failure to state a claim upon which relief could be granted.[4]

"To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). To establish a constitutionally protected liberty or property interest, an inmate must show he suffered an "atypical and significant" hardship or deprivation in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest). A mere loss of privileges while in prison generally does not implicate the Due Process Clause. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Judges of this court have ruled that "small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." Roscoe v. Mullins, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept.

---

[4] Under 28 U.S.C. § 1915A(b)(1), a court may summarily dismiss any prisoner-filed civil action seeking redress from a governmental entity or officer if the court determines that "the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted."

10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty imposed was a fifteen-dollar penalty), appeal docketed, No. 19-7343 (4th Cir. Sept. 24, 2019); Ferguson v. Messer, No. 7:15CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three twelve-dollar fines did not give rise to a protected property interest); Bratcher v. Mathena, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding twelve-dollar fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a loss of a protected property interest ). As in the foregoing cases, the Red Onion hearing officer imposed a small fine (fifteen dollars) on Bowling, and that penalty is insufficient to give rise to a protected property interest in the context of prison life under the rationale of Sandin.[5] As such, Bowling had no federal due process right to particular procedural protections during the disciplinary proceedings, and his due process claims concerning the fine must be summarily dismissed, pursuant to § 1915A(b)(1).

In Bowling's verified complaint, he contends that as a result of the challenged disciplinary conviction at Red Onion, he also lost earned good conduct time through the MDOC. See Compl. 7, ECF No. 1. For purposes of this opinion, the court will assume this assertion to be accurate. Generally, before an inmate may lose earned good conduct time credits that would otherwise reduce his term of confinement, he is entitled to limited federal procedural protections, which include: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when

---

[5] Although the Fourth Circuit has not yet spoken directly on this issue, some courts have expressed doubt as to whether Sandin's analysis—requiring that the imposed hardship be "atypical and significant" to create a constitutionally protected interest—applies in the context of property deprivations, given that Sandin addressed whether a particular deprivation implicated a liberty interest. See Anderson v. Dillman, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on this issue and discussing the different rationales underlying the decisions). But the Fourth Circuit has implied that Sandin is applicable in this context when it determined under Sandin that a prisoner "did not have a constitutionally protected liberty or property interest in his prison job." Backus v. Ward, 151 F.3d 1028, 1998 WL 372377, at *1 (4th Cir. 1998) (unpublished).

consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)).

Bowling cannot pursue his due process claims under Wolff in this § 1983 action, however, to invalidate a disciplinary charge in hopes of regaining lost good conduct time. See Edwards v. Balisok, 520 U.S. 641, 646 (1997) (holding that a § 1983 claim for declaratory relief and money damages was barred, where the "principal procedural defect complained of" — a deceitful and biased decision maker — "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits").

> [A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

The success of Bowling's § 1983 claim that the disciplinary hearing officer denied him the video evidence, photographs, and witness questions, in violation of his federal due process rights, would necessarily imply the invalidity of the resulting disciplinary conviction and penalties, including the alleged loss of good time through the MDOC. Bowling provides no evidence that his disciplinary conviction has been invalidated or overturned through administrative proceedings. Accordingly, his § 1983 due process claims regarding the alleged loss of good conduct time are barred under Balisok and Wilkinson, and the court must dismiss them without prejudice, pursuant to § 1915A(b)(1).

### III. CONCLUSION.

For the reasons stated, the court concludes that the defendants' motion must be denied as to their argument that Bowling failed to exhaust administrative remedies regarding his federal and state law claims related to use of alleged excessive force. The court will refer the matter to the magistrate judge for further proceedings on exhaustion as to these claims. Pursuant to § 1915A(b)(1), the court will summarily dismiss Bowling's due process claims regarding his disciplinary fine and any alleged loss of good conduct time in Maryland, related to the disciplinary proceedings. As to these claims, the defendants' motion will be dismissed without prejudice. An appropriate order will be entered herewith.

The clerk will send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

**ENTER:** This  28th day of July, 2020.

*/s/ Glen Conrad*

Senior United States District Judge