IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARIO L. BOWLING, | ) | |
|     Plaintiff, | ) | CASE NO. 7:19CV00453 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, ET AL., | ) | By: Hon. Glen E. Conrad |
|     Defendants. | ) | Senior United States District Judge |

The plaintiff, Mario L. Bowling, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging that the defendants used excessive force against him and denied him due process related to a disciplinary hearing. After review of the record, the court concludes that the defendants' motion for summary judgment must denied.

I.  BACKGROUND.

Bowling alleges the following sequence of events on which he bases his § 1983 claims.  In the summer of 2017, Bowling was confined at Red Onion State Prison ("Red Onion").  On June 24, 2017, as Bowling left the housing unit for the recreation yard, another inmate attacked him, and Bowling "defended himself." Compl. 4, ECF No. 1. Officers reported the incident. When K9 Officer T.S. Bray responded with his canine, Bowling saw him enter the housing area, turned to face away from Bray, and began to place himself face down on the ground. With no verbal warning and before Bowling could reach the ground, Bray engaged his canine on Bowling's right tricep muscle. Bowling turned toward Bray. "The canine then released [Bowling's] shoulder but, almost immediately[,] bit into [his] left hamstring." Id. Bray "held [Bowling's] leg in the air allowing his canine to sink his teeth into it, all while both of [the inmate's] hands were on the ground in a non-aggressive prone position." Id. at 5. Other officers arrived, assisted in restraining

Bowling, and escorted him to the medical unit. J. Stanley, another K9 officer, took photographs of Bowling's injuries, while a sergeant videotaped the medical procedure. Bowling suffered a "bite wound to his left hamstring that required daily dressing change and two months to fully heal." Id.

Based on this dog bite incident, on June 26, 2017, an officer served Bowling with a disciplinary charge for gathering around or approaching any person in a threatening or intimidating manner. Bowling signed the form indicating that he had been informed of the charge and advised of his rights for the hearing. He declined the penalty offer, thus signaling his understanding that a disciplinary hearing would be scheduled. Bowling asked for production of the surveillance camera videotape of the incident and the photographs of his injuries for use at the disciplinary hearing. M.L. Counts conducted the hearing on July 13, 2017. Counts refused Bowling's request for the video footage because it was restricted for security reasons. She refused the request for photographs as untimely submitted. Counts also refused to allow Bowling to complete his questioning of Bray and ruled that Bowling was "being disruptive and dismissed the hearing," which was deemed a finding of guilt. Id. at 6. The imposed penalty was a $15 fine. On appeal, Warden Kiser refused to overturn Counts' rulings and upheld the guilty finding. Bowling asserts that because he is an Interstate Corrections Compact ("ICC") inmate, who was convicted in Maryland, the guilty finding "resulted in a loss of several months of Good Conduct Credits" through the Maryland Division of Corrections ("MDOC"). Id. at 7.

Bowling filed his § 1983 complaint in June of 2019, alleging the following claims: (1) Bray used excessive force against him; (2) Bray committed state law torts of assault and battery against him; (3) K9 Officer Stanley, Warden Kiser, and VDOC Director Clarke failed to act on knowledge of a widespread pattern of excessive force by K9 officers against inmates; (4) at the

disciplinary hearing, Counts failed to allow Bowling requested evidence to offer in his defense (video footage and photographs) and denied a meaningful opportunity to question the reporting officer, all in violation of due process; and (5) Warden Kiser failed to correct these due process violations on appeal.

The defendants have moved for summary judgment. They argue that Bowling's claims (1), (2), and (3) must be dismissed because he failed to properly exhaust available administrative remedies and that claims (4) and (5), alleging due process violations related to a disciplinary fine, are without merit. The magistrate judge granted the defendants' motion to stay all discovery on the merits of Bowling's claims. Bowling has responded to the defendants' exhaustion defense, making their motion ripe for disposition on that issue.

## II.  DISCUSSION.

### A.  The Summary Judgment Standard.

The standard of review for a motion for summary judgment is well-settled. The court shall grant summary judgment when the pleadings, discovery responses, and record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuinely disputed material fact exists if the evidence shows "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A court shall view the facts and reasonable inferences from the facts in the light most favorable to the nonmovant when ruling on a motion for summary judgment.[1]  Id. at 255.

---

[1] The court has omitted internal quotation marks, alterations, or citations here and elsewhere throughout this memorandum opinion, unless otherwise noted.

To be successful, a summary judgment movant must demonstrate that "there is an absence of evidence to support the non-moving party's case and . . . that the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits . . . , the nonmovant may not rest on the mere allegations or denials of the pleadings. See Oliver v. Va. Dep't of Corrs., No. 3:09CV00056, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing Fed. R. Civ. P. 56(e)). Instead, the nonmovant must respond by affidavits or otherwise and present specific facts from which a fact finder could reasonably find in his favor. See Anderson, 477 U.S. at 256–57. Verified complaints and pleadings by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

## B. Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. See 42 U.S.C. § 1997e(a). Exhaustion is mandatory under § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. Jones v. Bock, 549 U.S. 199, 216 (2007).

The Supreme Court has also instructed that the PLRA "requires proper exhaustion." Woodford, 548 U.S. at 93. Proper exhaustion means using all steps of the available administrative remedy procedure and doing so properly, so that the agency addresses the inmate's issue on the merits. See id. at 90. Thus, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy § 1997e(a). Id. at 83-84.

An inmate may escape summary judgment under § 1997e(a), if he states facts showing that the remedies under the established grievance procedure were not "available" to him. Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) ("An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

In support of their motion, the defendants have filed an affidavit from J. Messer, the Human Rights Advocate at Red Onion. See gen. Mem. Supp. Mot. Summ. Messer Aff. and Enclosure A, ECF No. 27-2. Messer states that she is responsible for maintaining inmate grievance files at Red Onion. Operating Procedure ("OP") 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a).

Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, verbally and then in writing on an Informal Complaint form. Once an inmate's Informal Complaint is properly filed, he should receive a receipt and within fifteen calendar days, he should also receive a written response to the issue he raised. If dissatisfied with the response, he may file a Regular Grievance on the issue and attach the Informal Complaint as documentation of his attempt to resolve the issue informally.

The inmate must file a Regular Grievance within thirty days of the occurrence about which it complains. A properly filed Regular Grievance will trigger an investigation, on which the warden or his designee will send the inmate a Level I response. The inmate should receive a Level I response within thirty days from the date of receipt, unless a continuance of up to thirty days is granted. OP 866.1(VI)(D). If the responding official determines the grievance to be "unfounded," the inmate will have five days to appeal that holding to Level II, and in some cases, to Level III of

the grievance procedure. OP 866.1(VI)(D)(6). The procedure provides that even if an inmate does not receive a response to his Regular Grievance, he may appeal: "Expiration of a time limit (to include any authorized continuance) at any stage of the process shall be considered a denial and shall qualify the grievance for appeal to the next level of review." OP 866.1(VI)(D)(5).

### C. Bowling's Exhaustion Efforts.

The defendants assert that based on Messer's records, Bowling filed a Regular Grievance on July 17, 2017, complaining that on June 24, 2017, Bray allowed his dog to bite Bowling's arm and hamstring. According to Messer, the warden issued a Level I response on August 1, 2017, finding the grievance to be unfounded, and Bowling did not appeal this response. On this evidence, the defendants contend that Bowling failed to properly exhaust administrative remedies as required under § 1997e(a). See gen. Messer Aff. ¶ 11-14 and Encl. A and B.

Bowling responds to the defendants' motion by presenting additional documentation of his exhaustion efforts. On June 28, 2017, Bowling filed an Informal Complaint about Bray's use of his dog against Bowling. Resp. Opp'n Ex. at 1, ECF No. 43-3. A staff member wrote a response at the bottom of the form, dated July 12, 2019, stating that Bray had engaged his canine after Bowling defied orders and continued to move while on the ground. Bowling filed a Regular Grievance dated July 17, 2017, providing his version of the events of the dog bite incident. The Grievance Department stamped this document as received on July 18, 2017. Id. at 2.

On August 23, 2017, Bowling submitted a Level II appeal to the regional ombudsman, stating that he had not yet received a Level I response to his Regular Grievance. Bowling asserted that because the thirty-day response time had elapsed, he was exercising his right under OP 866.1(VI)(D)(5) to advance to the next level of review. Id. at 3-5. On September 12, 2017,

-6-

Bowling wrote a Level III appeal, describing his attempt to appeal to Level II when he did not receive a timely copy of the Level I response. Id. at 9-10.

The court concludes that Bowling's verified declaration and supporting documentation, offered in response to the defendants' motion and Messer's affidavit, create a genuine issue of material fact as to whether or not he received a copy of the Level I response to his Regular Grievance within the required time limit.[2] The court also finds a genuine factual dispute as to whether without that Level I response, Bowling thereafter properly attempted to follow OP 866.1 procedures by pursuing an appeal to the next two levels of review, as his documentation appears to indicate. Accordingly, the court will deny the defendants' motion for summary judgment on the ground of exhaustion, regarding Bowling's claims (1), (2), and (3), and refer the exhaustion issue to the magistrate judge for further proceedings and resolution of this issue before addressing the possible merits of these claims concerning the dog bite incident.[3]

---

[2] It is also unclear whether once Bowling later obtained a copy of the Level I response, he would have been allowed to complete the normal exhaustion process without being ruled out of time.

[3] As stated, the defendants bear the burden of proving the affirmative defense that the plaintiff inmate failed to exhaust available administrative remedies regarding his claims. Jones, 549 U.S. at 212. Once they have done so, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that the administrative remedies were unavailable to him through no fault of his own. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished) (citing Moore, 517 F.3d at 725). In this case, neither side has requested a jury trial. Nonetheless, even if a jury demand had been made, circuit courts of appeals to address the question have found that a judge can resolve factual disputes concerning exhaustion of administrative remedies as required under § 1997e(a). See, e.g., See Allen v. Harwood, 728 F. App'x 222 (4th Cir. 2018) ("[W]e discern no error in the district court's decision to hold an evidentiary hearing—and reach credibility determinations based on the evidence presented at that hearing—for the limited purpose of determining whether Allen exhausted his administrative remedies.") (citing Messa v. Goord, 652 F.3d 305, 308 (2d Cir. 2011) (approving use of evidentiary hearing to determine whether plaintiff exhausted administrative remedies; collecting cases)); Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014) (explaining that judges should decide factual disputes concerning exhaustion); Drippe v. Tobelinski, 604 F.3d 778, 785 (3d Cir. 2010) (stating that resolving whether a prisoner administratively exhausted his claims required judgment of the court); Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010) (holding "judges may resolve factual disputes concerning exhaustion" through an evidentiary hearing on material factual disputes if necessary); Bryant v. Rich, 530 F.3d 1368, 1375–77 & n. 15 (11th Cir. 2008) (holding court may decide factual disputes concerning PLRA exhaustion and finding no right to a jury trial on the issue); Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008) (setting forth a framework for cases where parties contest PLRA exhaustion that requires the court to hold a hearing and decide the issue). Such questions arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. See 28 U.S.C. § 636(b)(1)(B) & (C).

D.  The Due Process Claims.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV § 1.  Where a claimant asserts a procedural due process claim, as Bowling does, the court must first consider whether the inmate has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest.  Incumaa v. Stirling, 791 F.3d 517, 526 (4th Cir. 2015).  When a disciplinary penalty does not affect the length of an inmate's term of confinement, his constitutionally protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life.  See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest).  To demonstrate a protected property interest, an inmate must have "an individual entitlement grounded in state law."  Couch v. Clarke, 782 F. App'x 290, 292 (4th Cir. 2019) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)).  If the inmate does not have a constitutionally protected interest, then the protections of the Due Process Clause do not apply.  Id. (citing Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)).

The defendants move for summary judgment on the due process claims, arguing that Bowling had no constitutionally protected interest at stake in the disciplinary proceedings.[4]  Specifically, they contend that the $15.00 fine Counts imposed on Bowling, for the charge of approaching Bray and his canine in a threatening manner, was not so atypical a deprivation as to

---

[4] Because the defendants requested and were granted a stay of discovery on the merits of Bowling's claims, the court ordinarily would not consider their summary judgment motion on the due process claims at this stage. Because the court determines that the motion must be denied, however, any remaining discovery issues can be resolved later.

create a protected interest under Sandin.<sup>5</sup> Arguably, however, the imposition of that fine, which was deducted from Bowling's inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected property interest without due process. See, e.g., Muhammad v. Commonwealth, No. 7:14CV00529, 2016 WL 1068019, at *15 (W.D. Va. Feb. 1, 2016), report and recommendation adopted in part, rejected in part on other grounds, No. 7:14CV00529, 2016 WL 1071039 (W.D. Va. Mar. 17, 2016) ("As to the charge of fighting with another person, the $12.00 fine against Muhammad implicates a property interest under the Due Process Clause, in spite of the Defendants' claim to the contrary.") (citing Burks v. Pate, 119 F. App'x 447, 450 (4th Cir. 2005) ("A prisoner has a protected property interest in his prison trust account. Therefore, a prisoner may not be deprived of those funds without minimum due process.")).

The court recognizes that the Fourth Circuit has not yet addressed this issue in a published decision, and that some courts disagree on whether Sandin's analysis—requiring that the particular hardship be "atypical and significant"—applies in the context of property deprivations, given that Sandin addressed whether a particular deprivation implicated a protected liberty interest.[6] The defendants' arguments and their cited, unpublished legal authority do not resolve this contested issue. Therefore, the court declines to grant their summary judgment motion on this ground.

---

[5] The defendants also argue that they are not the proper defendants to Bowling's contention that his disciplinary conviction at Red Onion caused him to lose good conduct time against his term of confinement on his Maryland criminal sentence. See Mem. Supp. Mot. Summ. J. 11 n. 3, ECF No. 27. Because the defendants successfully stayed discovery on the merits of Bowling's claims, however, he has not had a full opportunity to respond to this argument. Thus, the court finds it premature to address this issue.

[6] For example, the Supreme Court of Virginia recently considered whether a small fine imposed on a prisoner could give rise to a protected property interest sufficient to support a § 1983 claim. Anderson v. Dillman, 824 S.E.2d 481, 483–84 (Va. 2019). The Anderson court noted that there was some disagreement among federal courts on this issue and discussed the different rationales underlying the decisions; ultimately, the Court found it unnecessary to resolve the issue in the case before it. Id.

In the alternative, the defendants argue that Bowling received all of the due process protections required when a constitutionally protected interest is at stake. The court finds material factual disputes preclude summary judgment on this ground as well.

When an inmate's disciplinary conviction subjects him to deprivation of a constitutionally protected interest, he has certain, limited rights to procedural protections:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). Encompassed within the qualified right to present evidence and witness testimony is the qualified right to individualized consideration of a request for access to that evidence, including surveillance camera footage. See Lennear v. Wilson, 937 F.3d 257, 269–71 (4th Cir. 2019). Even if the denial of requested evidence constituted a due process error, the defendants are entitled to summary judgment if such error was harmless. See Brown v. Braxton, 373 F.3d 501, 508 (4th Cir. 2004). In this context, an error is not harmless if the undisclosed evidence could have aided the inmate's defense against the disciplinary charge. Lennear, 937 F.3d at 277.

The defendants' primary argument here is that Bowling had no federal right to the video and other evidence at the hearing, because he had no protected interest. As already discussed, the court finds this argument unpersuasive at this stage of the proceedings. Moreover, the court concludes that Bowling has sufficiently alleged that he was denied due process. Taking his evidence in the light most favorable to him, he alleges that the video footage, the photographs, and the barred questions to Bray would have aided his defense. Specifically, he claims that this evidence would have bolstered his own testimony that he was facing away from Bray and was not

approaching Bray in a threatening manner when the canine engaged. Yet, Counts denied consideration of the video footage under a blanket restriction for unspecified security reasons, denied the photographs as untimely requested, and denied additional questioning of Bray as irrelevant. While further evidence at trial may bear out Counts' reasoning on some or all of these issues, the court concludes that the evidence in the record is sufficiently in dispute to preclude summary judgment. For the stated reasons, the court will deny the defendants' motion for summary judgment as to Bowling's due process claims. Because neither party has requested a jury trial, the court will refer this aspect of the case to the magistrate judge for further proceedings, including a bench trial.

### III. CONCLUSION.

For the reasons stated, the court concludes that the defendants' motion must be denied as to exhaustion of the excessive force claims and as to the merits of the due process claims. The court will refer the matter to the magistrate judge for further proceedings. An appropriate order will be entered herewith.

The clerk will send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

**ENTER:** This  28th day of July, 2020.

_____
Senior United States District Judge