23IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARIO L. BOWLING, | ) | |
|     Plaintiff, | ) | CASE NO. 7:19CV00453 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARKE, ET AL., | ) | By: Hon. Glen E. Conrad |
|     Defendants. | ) | Senior United States District Judge |

The plaintiff, Mario L. Bowling, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, brought this action under 42 U.S.C. § 1983, alleging that various defendants used excessive force against him and denied him due process at a related disciplinary hearing. These claims are set to be scheduled for a jury trial. The matter is currently before the court on the defendants' second motion for summary judgment on the ground of qualified immunity as to the due process claims.[1] After review of the record, the court concludes that the defendants' motion must be granted in part and denied in part.

I. BACKGROUND.

In the summer of 2017, Bowling was confined at Red Onion State Prison ("Red Onion").[2] On June 24, 2017, he was involved in an altercation with prison officials who engaged a canine on

---

[1] The recent motion for judgment on the pleadings as to some defendants will be separately addressed.

[2] Bowling states that he is confined in the VDOC under the Interstate Corrections Compact ("ICC") for a sentence imposed by a state court in Maryland.

him, twice.³ Based on this dog bite incident, on June 26, 2017, an officer served Bowling with a disciplinary charge for gathering around or approaching any person in a threatening or intimidating manner. In preparation for the disciplinary hearing, Bowling asked for production of the surveillance camera videotape of the incident and the photographs of his injuries. M.L. Counts conducted the hearing on July 13, 2017. Counts refused Bowling's requests for the video footage because the footage was allegedly restricted for security reasons. She refused the request for photographs as untimely submitted. Counts also refused to allow Bowling to complete his questioning of the reporting officer about the dog bite wounds positioned on the back of his extremities. Rather, Counts ruled that Bowling was "being disruptive, dismissed the hearing," and found Bowling guilty of the offense, based on Bray's report. Compl. 6, ECF No. 1.⁴ The imposed penalty was a $15 fine. On appeal, Warden Kiser refused to overturn Counts' rulings. Bowling also claims that as a result of this disciplinary infraction, Maryland correctional officials penalized him with a loss of several months of good conduct time. See Compl. 7; Resp. Ex. 1, ECF No. 101-2.⁵

---

³ In the complaint, Bowling alleged that

> [w]hen K9 Officer T.S. Bray responded with his canine, Bowling saw him enter the housing area, turned to face away from Bray, and began to place himself face down on the ground. With no verbal warning and before Bowling could reach the ground, Bray engaged his canine on Bowling's right tricep muscle. Bowling turned toward Bray. "The canine then released [Bowling's] shoulder but, almost immediately[,] bit into [his] left hamstring." [Compl. 5, ECF No. 1.] Bray "held [Bowling's] leg in the air allowing his canine to sink his teeth into it, all while both of [the inmate's] hands were on the ground in a non-aggressive prone position. Id.

Bowling v. Clarke, No. 7:19CV00453, 2020 WL 4340944, at *1 (W.D. Va. July 28, 2020).

⁴ Page numbers in this memorandum opinion refer to the pages of the ECF documents.

⁵ Bowling presents a document appearing to indicate that, taking into account good conduct time he has earned and/or forfeited, his projected release date from his Maryland criminal sentence is November 24, 2028.

In the § 1983 complaint, Bowling seeks monetary damages from the defendants for excessive force and denial of due process and, liberally construed, also seeks injunctive relief related to alleged due process violations. The court denied the defendants' initial summary judgment motion, which argued that Bowling had failed to exhaust available administrative remedies as to his excessive force claims and that he had no protected interest at stake during the disciplinary proceedings, because his only penalty was a monetary fine. Thereafter, the defendants moved to withdraw their exhaustion defense, a motion that the court granted. As stated, the instant motion seeks summary judgment as to the due process claims on the ground of qualified immunity. Bowling has responded, making that matter ripe for disposition.

## II. DISCUSSION.

The court shall grant summary judgment when the record reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuinely disputed material fact exists if the evidence shows "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A court shall view the facts and reasonable inferences from the facts in the light most favorable to the nonmovant when ruling on a motion for summary judgment.[6] Id. at 255.

As the court previously held in this case,

> The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. Where a claimant asserts a procedural due process claim, as Bowling does, the court must first consider whether the inmate has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. Incumaa v. Stirling, 791 F.3d 517, 526 (4th Cir. 2015). When a disciplinary penalty does not affect the length of an inmate's term of

---

[6] The court has omitted internal quotation marks, alterations, or citations here and elsewhere throughout this memorandum opinion, unless otherwise noted.

> confinement, his constitutionally protected liberty interests are generally limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). To demonstrate a protected property interest, an inmate must have "an individual entitlement grounded in state law." Couch v. Clarke, 782 F. App'x 290, 292 (4th Cir. 2019) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982)). If the inmate does not have a constitutionally protected interest, then the protections of the Due Process Clause do not apply. Id. (citing Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)).

Bowling, 2020 WL 4340944, at *5. On the other hand, when a disciplinary conviction involves a penalty that will, inevitably, lengthen the plaintiff's term of confinement, certain procedural safeguards apply. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). These limited protections include: 1) advance written notice of the charges, 2) a hearing before an impartial decision maker, 3) the opportunity to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, 4) an opportunity for non-attorney representation if the inmate is illiterate or the disciplinary hearing is complex, and 5) a written decision setting forth the evidence relied upon and the reasons for the disciplinary action. Id. at 563-71. Further, "revocation of good time does not comport with the minimum requirements of procedural due process, . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst., at Walpole v. Hill, 472 U.S. 445, 454 (1985). The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. Id. at 455-56.

As stated, the defendants first moved for summary judgment on Bowling's due process claims, contending that the $15.00 fine Counts imposed on him was not so atypical a deprivation as to create a protected interest under Sandin. The court found, however, that the imposed monetary fine arguably deprived Bowling of a protected property interest that might trigger federal

due process protections and denied summary judgment. Bowling, 2020 WL 4340944, at *5 (citing Muhammad v. Commonwealth, No. 7:14CV00529, 2016 WL 1068019, at *15 (W.D. Va. Feb. 1, 2016), report and recommendation adopted in part, rejected in part on other grounds, No. 7:14CV00529, 2016 WL 1071039 (W.D. Va. Mar. 17, 2016) ("As to the charge of fighting with another person, the $12.00 fine against Muhammad implicates a property interest under the Due Process Clause, in spite of the Defendants' claim to the contrary.") (citing Burks v. Pate, 119 F. App'x 447, 450 (4th Cir. 2005) ("A prisoner has a protected property interest in his prison trust account. Therefore, a prisoner may not be deprived of those funds without minimum due process.")). Alternatively, the defendants argued that Bowling had received all required procedural protections; finding material factual disputes on that issue, the court rejected this argument.[7] Id. at *6 (citing Lennear v. Wilson, 937 F.3d 257 (4th Cir. 2019) (recognizing limited due process right to review surveillance camera footage in disciplinary proceedings)).

In the instant motion, the defendants argue for qualified immunity against Bowling's claims for monetary damages on the ground that in June and July of 2017, it was not clearly established that a monetary fine for a disciplinary conviction triggered federal due process protections.

> "To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009). The Supreme Court has held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and are not immune from liability under the Eleventh Amendment. Hafer v. Melo, 502 U.S. 21, 31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). They may, however, be protected from liability under the doctrine of qualified immunity. Id. at 25, 112 S. Ct. 358

---

[7] The court notes that Bowling asked the disciplinary hearing officer to review the surveillance video of the incident at issue, because he believed that this footage would reflect that he did not step in a threatening manner toward the K-9 officer as the disciplinary report charged. In response to Bowling's discovery requests, the defendants have produced a DVD of this footage to the court; Bowling has viewed it and does not dispute its authenticity. This footage will be available for Bowling to use at trial.

("[O]fficials sued in their personal capacities . . . may assert personal immunity defenses . . . .").

> The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (per curium) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). "To determine whether a complaint should survive a qualified-immunity based motion to dismiss, [courts] exercise 'sound discretion' in following the two-prong inquiry set forth by the Supreme Court . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right. Meyers v. Balt. Cnty., 713 F.3d 723, 731 (4th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Under the second prong, the court determines "whether the right at issue was 'clearly established' at the time of the [defendants'] conduct." Id. (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151). Officials are entitled to qualified immunity if either prong is not satisfied by the plaintiff. Pearson, 555 U.S. at 244–45, 129 S. Ct. 808; see also Cybernet, LLC v. David, 954 F.3d 162, 169 (4th Cir. 2020) ("Specifically, to defeat a qualified immunity defense, a plaintiff must show that '(1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation.'") (quoting Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018)).

Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc. v. Rector & Visitors of Univ. of Virginia, No. 3:18CV00085, 2020 WL 7028709, at *5 (W.D. Va. Nov. 30, 2020). The defendants argue that Bowling cannot defeat the second prong of the qualified immunity analysis.

The court finds this argument to be well taken. As the court previously noted,

> the Fourth Circuit has not yet addressed this issue in a published decision, while some courts disagree on whether Sandin's analysis—requiring that the particular hardship be "atypical and significant"—applies in the context of property deprivations, given that Sandin addressed whether a particular deprivation implicated a liberty interest.

Bowling, 2020 WL 4340944, at *5 (footnote omitted). Moreover, district courts in the Fourth Circuit have held in unpublished opinions that a small monetary fine does not pose an atypical and significant hardship on a plaintiff inmate so as to trigger federal due process protections during disciplinary proceedings. See Roscoe v. Kiser, No. 7:18-CV-00332, 2020 WL 4677520, at *3

(W.D. Va. Aug. 12, 2020); Roscoe v. Mullins, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019), aff'd, 828 F. App'x 921 (4th Cir. 2020); Ferguson v. Messer, No. 7:15CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017); Bratcher v. Mathena, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016); Henderson v. Virginia, No. 7:07cv266, 2008 U.S. Dist. LEXIS 5230, at *33-34, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008). The Supreme Court of Virginia has also noted significant disagreement among federal courts regarding the issue: whether a small fine imposed on a prisoner gives rise to a protected property interest sufficient to support a § 1983 claim.[8] See Anderson v. Dillman, 824 S.E.2d 481, 483–84 (Va. 2019). Because the Anderson Court resolved the claims before it on other grounds, however, it made no finding on the issue. Id. at 483–85.

To determine whether the law was clearly established for qualified immunity purposes, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Lefemine v. Wideman, 672 F.3d 292, 298 (4th Cir. 2012) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (1999)), vacated on other grounds, 568 U.S. 1 (2012). No Supreme Court, Fourth Circuit,

---

[8] Specifically, the Anderson Court noted:

> What is true for liberty interests, some courts have held, must also be true for property interests. See Clark v. Wilson, 625 F.3d 686, 691 (10th Cir. 2010) (applying the Sandin requirements to an asserted property interest in a prison trust account); McMillan v. Fielding, 136 F. App'x 818, 820 (6th Cir. 2005) ("Ten days in lock up, the loss of package privileges, and a $4.00 fine do not constitute an atypical and significant hardship in the context of prison life."); Cosco v. Uphoff, 195 F.3d 1221, 1223 (10th Cir. 1999) (applying the Sandin requirements to an asserted property interest in hobby and legal materials kept in cells). Though other courts have applied more favorable standards to claimed deprivations of property interests, this view has been criticized as an "elevation of an inmate's property rights over his liberty rights." Burns v. Pennsylvania Dep't of Corr., 544 F.3d 279, 296 (3d Cir. 2008) (Hardiman, J., dissenting).

824 S.E.2d at 483, 483 n. 4 (citing Burns v. Pennsylvania Dep't of Corr., 544 F.3d 279, 293 (3d Cir. 2008) (finding that "Sandin and its progeny do not control" in a case involving an asserted property interest in an inmate account); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (stating that "[Sandin] did not instruct on the correct methodology for determining when prison regulations create a protected property interest")).

or Virginia case had held, as of June and July 2017, that a small fine imposed on a prisoner, like the $15 fine in Bowling's case, could trigger due process protections.

Based on the foregoing, the court concludes that it was not clearly established in the Fourth Circuit in the summer of 2017 that a small, monetary fine triggers federal due process protections during prison disciplinary proceedings. See, e.g., Roscoe v. Kiser, No. 7:18-CV-00332, 2020 WL 4677520, at *3 (W.D. Va. Aug. 12, 2020) (Dillon, J.) (holding same). Similarly, it was not clearly established in the summer of 2017 that inmates had a qualified right to have surveillance camera footage reviewed in disciplinary proceedings. See Lennear v. Wilson, 937 F.3d 257, 273–74 (4th Cir. 2019) (establishing "for the first time in this circuit that inmates at risk of being deprived a liberty interest, like good time credits, have a qualified right to obtain and compel consideration of video surveillance evidence) (emphasis omitted); see also Thompson v. Hartsfield, No. 5:17-CT-3262-FL, 2020 WL 5709247, at *5 (E.D.N.C. Sept. 24, 2020) (finding that defendants were entitled to qualified immunity with respect to plaintiff's claims for monetary damages because the right to video surveillance evidence during a prison disciplinary proceeding was not clearly established prior to Lennear). Therefore, the defendants in this case are entitled to summary judgment on the ground of qualified immunity with respect to Bowling's claim for monetary damages for alleged due process violations during the disciplinary proceedings.

Liberally construing the complaint, Bowling also seeks injunctive relief related to the alleged due process violations. "[Q]ualified immunity does not extend to claims seeking injunctive relief." Vollette v. Watson, 937 F. Supp. 2d 706, 720 (E.D. Va. 2013) (citing other cases). Because the defendant's second motion for summary judgment is based solely on qualified immunity, the motion will be denied as to the due process claim for injunctive relief, and that claim will proceed

to a bench trial.[9]  The bench trial will be conducted immediately following the jury trial on the excessive force claim.[10]  An appropriate order will be entered herewith.

The clerk will send a copy of this memorandum opinion and the accompanying order to the plaintiff and to counsel of record for the defendants.

**ENTER:** This __8th__ day of February, 2021.

_____
Senior United States District Judge

---

[9] See Keller v. Prince George's County, 827 F.2d 952, 955-56 (4th Cir. 1987) (noting that a jury trial is unavailable where a § 1983 claim seeks equitable relief, rather than monetary damages).

[10] In preparing for the bench trial, the parties may wish to refer to the issues identified by the United States Court of Appeals for the Fourth Circuit in Lennear v. Wilson, 937 F.3d at 268–79.
.